**LAW OFFICES OF SCOTT A. STEINBERG**
*Proposed Attorney for the Debtor*
626 RXR Plaza, West Tower
Uniondale, New York 11556
(516) 522-2566
Scott A. Steinberg, Esq.
ssteinberg@saslawfirm.net

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

**r4 VASCULAR, INC.,**

Chapter 11
Case No. 13-12409 (SCC)

                              **Debtor.**

-----------------------------------------------------------------X


### DECLARATION OF JAY STURM
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2


STATE OF NEW YORK              )
                              ) ss.:
COUNTY OF NEW YORK            )

    JAY STURM, being duly sworn, deposes and says:

    1.    I am the Secretary of r4 Vascular, Inc. (the "Debtor"), a Delaware corporation

with an address at 1270 Avenue of the Americas, Suite 302, New York, N.Y. 10020.  Pursuant to

Bankruptcy Rule 1007(d) and Local Rule of this Court 1007-2, the Debtor provides the

following information.

**Local Rule 1007-2(a)(1)**

    2.    The Debtor owns and operates a medical device development business

specializing in peripheral vascular access products that are sold either via direct sales or through

distributors.  The Debtor combines innovative design and manufacturing supervision with an

1

intimate knowledge of the needs of patients, oncologists, interventional radiologists, surgeons, and nurses to create specialized premium access vascular products. These products help clinicians access patient vasculature, and effectively maintain access for delivering chemotherapy, blood products, antibiotics, drugs or nutrition.

3.      The Debtor's employees and contractors represent in-depth experience in the medical device industry, with unrivaled experience and insight in vascular access.

4.      The Debtor's products include the Zeus biomimetically coated, peripherally inserted central catheter ("PICC"), which is the first Biomimetic coated PICC on the market, and the first non-valved saline-maintainable PICC. The Biomimetic coating on inner and outer surfaces mimics vessel tissue; is non-eluting and allows heparin free maintenance and reduces thrombosis accumulation. The biomimetic coating does not change over time, and the PICC may remain indwelling for longer periods of time because thrombosis accumulation is reduced and less pressure is required to clear thrombosis.

5.      The Debtor also developed and manufactures the Pegasus CT PICC line, which is the Debtor's uncoated power injectable PICC for patients who may not need a biomimetic coated PICC. It incorporates a novel hub that allows the clinician to suture anywhere along the patient pending hub, or use of a sutureless system for secure placement. This small feature simplifies catheter placement and gives the Debtor's PICC distinct adaptability in a wide range of placements. The power injection line is an important adjunct for injection of fluids like contrast media for diagnostic imaging. Additionally, the multiple lumen design of the Debtor's catheters helps reduce needle sticks for greater patient comfort and safety. More lumens may also lessen access procedures by the clinician and care-giver – important goals for intravenous access.

6.      Another device developed, but not released, by the Debtor is DrainEx, a rapid

exchange drainage catheter. DrainEx is a kink resistant polyurethane catheter with a patent pending rapid exchange lumen, and built in suture cutting cleat that enables a single clinician to lock the catheter without needing a second set of hands. Because drainage catheters sometimes fail because of occlusion, replacement procedures routinely take longer to exchange out and often need a more invasive replacement catheter. The Debtor's exchange lumen should reduce hospital costs and allow for a quick exchange of the failed catheters.

7.      Other products developed and manufactured by the Debtor include Duraspan, a biomimetically coated dialysis catheter which allows for access and flow for the long term. Duraspan's non-eluting biomimetic coating brings increased reliability and performance to long term dialysis access. The Debtor also developed the Pherocious CT Apheresis Catheter, which has been described as the new standard for addressing the challenges of long term apheresis. Finally, the Debtor manufactures numerous accessories for catheter placement and maintenance.

8.      Importantly, due to poor market acceptance of the Debtor's catheter products, and an unexpected product recall of its Duraspan catheter due to manufacturing issues, the Debtor ceased sales of its entire catheter line early in the second quarter of 2012. The Debtor's financial difficulties are due to the cessation of sales of its catheter line; thus its inability to cover operating expenses. As a result, the Debtor's senior secured creditor found itself with a significant equity investment in the company and essentially zero sales to cover operating costs.

9.      Beginning in 2009, Debtor began development of an ultra-high-pressure Percutaneous Transluminal Angioplasty (coronary) balloon catheter, trade named "Vector" that was designed to be used in dilating calcified lesions in patient vasculature. Debtor's corporate strategy was to diversify its business away from the catheter products described above – and that sales from the catheter products would provide cash flow to cover the cost of the Vector

development program. Unfortunately, this was not the case and the pursuit of the Vector development program resulted in significant expenditures of Debtor's capital and the Debtor was also required to raise substantial additional capital, which the senior creditor provided in the form of a secured line of credit in July 2010.

10.    The course of the Vector development program was tortuous, taking far longer and costing far more than anticipated. However, submission to the FDA was achieved in late 2010, and based on anticipated FDA approval of the Vector coronary balloon catheter Debtor began the process of marketing the company in whole or in parts (e.g. offering to split Debtor's Vector product from its non-balloon catheter product lines.) The Debtor had three significant indications of interest at reasonable valuations over the course of the next 18 months – all of which were terminated without sale.

11.    With three failed sale attempts, the secured creditor decided to stop funding the Debtor. Further, having exhausted all other sales opportunities, Debtor made the decision to accept the only bid that passed due diligence review – for Debtor's non-balloon catheter related intellectual property (i.e. two 510K FDA approvals associated with certain of the peripheral access catheter products). In April 2013 the Debtor sold this intellectual property to C.R. Bard for $500,000. As of July 2013, the funds received from this sale have been almost fully expended on overhead, and without a source of continued financing, the Debtor had no choice but to file for relief under Chapter 11.

**Local Rule 1007-2(a)(2)**

12.    This case was not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

**Local Rule 1007-2(a)(3)**

13.    Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

14.    The names and addresses of the twenty (20) largest unsecured creditors excluding (i) those creditors who or which would not be entitled to vote at a creditors' meeting under 11 U.S.C. Section 702; (ii) such creditors who were employees of the Debtor at the time of the filing of its petition for reorganization; and (iii) creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) are annexed hereto as **Exhibit "A"**.

**Local Rule 1007-2(a)(5)**

15.    A list of the Debtor's five largest secured creditors is annexed hereto as **Exhibit "B"**.

**Local Rule 1007-2(a)(6)**

16.    A summary of the Debtor's assets and liabilities is annexed as **Exhibit "C"**.

**Local Rule 1007-2(a)(7)**

17.    The Debtor does not have any publicly held shares of stock, debentures or other securities.

**Local Rule 1007-2(a)(8)**

**18.**    None of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.  Some of the Debtor's inventory is in the possession of Banta Global Turnkey Ltd., an unsecured creditor of the Debtor.

**Local Rule 1007-3(a)(9)**

19.    The Debtor operates its business at premises located at 1270 Avenue of the

Americas, Suite 302, New York, N.Y. 10020 and at 7550 Meridian Circle N, #150, Maple

Grove, Minnesota 55369 pursuant to the terms of a lease between Liberty Property Trust, 10400

Viking Drive, Suite 130, Eden Prairie, Minnesota 55344, as landlord and the Debtor as tenant.

**Local Rule 1007-2(a)(10)**

20.    The Debtor's substantial assets are located at (i) 1270 Avenue of the Americas,

New York, New York; (ii) 7550 Meridian Circle N, #150, Maple Grove, Minnesota 55369 and

(iii) at the premises of Banta Global Turnkey Ltd., a creditor of the Debtor.

**Local Rule 1007-2(a)(11)**

21.    As of the Filing Date, the Debtor was not a party to any litigation.

**Local Rule 1007-2(a)(12)**

22.    The Debtor's senior management is comprised of Steven Jacobs, the President of

the Debtor and Jay Sturm, the Secretary of the Debtor.  Mr. Jacobs oversees the day-to-day

operations of the business.

**Local Rule 1007-2(b)(1)**

23.    The estimated total payroll to employees (exclusive of officers, directors and

shareholders) for the thirty (30) day period following the filing of the chapter 11 petition is

approximately $ 11,000.00.

**Local Rule 1007-2(b)(2)**

24.    The estimated amount to be paid for services to its officers, directors and

shareholders for the thirty (30) day period following the filing of the Chapter 11 petition is

approximately $ 3,000.00.

**Local Rule 1007-2(b)(3)**

25.    The estimated schedule of cash receipts and disbursements for the thirty (30) day

period following the filing of the Chapter 11 petition is attached hereto as **Exhibit "D"**.

**<u>Conclusion</u>**

26.    In addition to the foregoing, a list of all shareholders, directors and officers is annexed as **Exhibit "E"**.

27.    A copy of the corporate resolution authorizing the filing of this Chapter 11 case is annexed hereto as **Exhibit "F"**.

28.    The Debtor believes it is in the best interests of all of its creditors that it be afforded an opportunity to refinance and reorganize its obligations in Chapter 11.

29.    The needs and interests of the Debtor and its creditors will best be served by the Debtor's possession of its assets and management of its affairs as a Debtor-in-Possession under Chapter 11 until confirmation of a reorganization plan.

30.    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

New York, New York
July 24, 2013

                              */s/ Jay Sturm*
                              Jay Sturm, Secretary

# EXHIBIT "A"

## TWENTY LARGEST UNSECURED CREDITORS*

**See Attached**

\* List does not include insiders within the meaning of 11 U.S.C. Section 101 (14)

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re   **r4 Vascular, Inc.** _____     Case No. _____

_____ Debtor(s)     Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Babian CPA Associates 9 East 40th Street #301 New York, NY 10016-0402 | Babian CPA Associates 9 East 40th Street #301 New York, NY 10016-0402 | Accounting Services | | 8,053.44 |
| Cooley LLP 101 California 5th Floor San Francisco, CA 94111-5800 | Cooley LLP 101 California 5th Floor San Francisco, CA 94111-5800 | Legal Services | | 198.00 |
| DLA Piper LLP P.O. Box 64029 Baltimore, MD 21264-0001 | DLA Piper LLP P.O. Box 64029 Baltimore, MD 21264-0001 | Legal Services | Disputed | 212,416.64 |
| Fast Forward Medical 14800 28th Ave. N Suite 150 Plymouth, MN 55447 | Fast Forward Medical 14800 28th Ave. N Suite 150 Plymouth, MN 55447 | Trade Debt | | 89,664.86 |
| Grand Avenue Software, Inc. 180 5th Street E Suite 256 Saint Paul, MN 55101-1844 | Grand Avenue Software, Inc. 180 5th Street E Suite 256 Saint Paul, MN 55101-1844 | Trade Debt | | 2,531.96 |
| Health Line International 803 N 1250 W Suite 1 Centerville, UT 84014-1387 | Health Line International 803 N 1250 W Suite 1 Centerville, UT 84014-1387 | Trade Debt | | 78,037.00 |
| Medical Device Evaluation Ctr. 803 N 300 W Salt Lake City, UT 84103-1414 | Medical Device Evaluation Ctr. 803 N 300 W Salt Lake City, UT 84103-1414 | Trade Debt | | 12,160.00 |
| RR Donnelley P.O. Box 905151 Charlotte, NC 28290-5151 | RR Donnelley P.O. Box 905151 Charlotte, NC 28290-5151 | Trade Debt - Venue Services | | 7,648.20 |

B4 (Official Form 4) (12/07) - Cont.

In re   **r4 Vascular, Inc.**                                        Case No. _____

_____
           Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **RR Donnelley** **P.O. Box 846299** **Dallas, TX 75284-0001** | **RR Donnelley** **P.O. Box 846299** **Dallas, TX 75284-0001** | **Trade Debt - Global Turnkey Solutions** | | 374,437.54 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date ___22 July 2013___            Signature _____

                                              **Steven Jacobs**
                                              **President**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2013 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

EXHIBIT "B"

## 5 LARGEST SECURED CREDITORS*

| Creditor | Amount |
|---|---|
| White Sand Beach LLC<br>c/o Robinson Brog Leinwand Greene Genovese & Gluck<br>875 Third Avenue, 9th Floor<br>New York, New York 10020<br>Attn: A. Mitchell Greene | $8,956,502.80 |

\* Does not include the holders of equipment leases.

## EXHIBIT "C"

## SUMMARY OF ASSETS AND LIABILITIES

See Attached

# r4 Vascular, Inc.

Balance Sheet

|  | Jun 30, 13 | Jul 18, 13 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| 10110 · Checking - BMO Harris Bank | 176,572.97 | 96,616.11 |
| 10210 · Money Market - BMO Harris Bank | 25,436.08 | 25,436.08 |
| 10400 · RRD Prepay Account | 6,825.87 | 0.00 |
| **Total Checking/Savings** | 208,834.92 | 122,052.19 |
| **Accounts Receivable** | | |
| 12000 · Accounts Receivable - Trade | 10,000.00 | 1,000.00 |
| **Total Accounts Receivable** | 10,000.00 | 1,000.00 |
| **Other Current Assets** | | |
| **13 · Inventory** | | |
| 13000 · FG Inventory - PICC | 361,178.03 | 361,178.03 |
| 13020 · FG Inventory - Dialysis | 184,062.50 | 184,062.50 |
| 13040 · FG Inventory - Apheresis | 36,281.00 | 36,281.00 |
| 13050 · FG Inventory - Access | 17,527.00 | 17,527.00 |
| 13060 · FG Inventory - Drainage | 21,560.00 | 21,560.00 |
| 13080 · FG Inventory - Other | 3,828.00 | 3,828.00 |
| 13800 · Component Inventory @ RRD | 219,466.38 | 219,466.38 |
| 13850 · RM Inventory | 808,080.65 | 808,080.65 |
| 13900 · Inventory Reserve | -479,811.93 | -479,811.93 |
| **Total 13 · Inventory** | 1,172,171.63 | 1,172,171.63 |
| 15100 · Prepaids | 10,233.00 | 10,233.00 |
| **Total Other Current Assets** | 1,182,404.63 | 1,182,404.63 |
| **Total Current Assets** | 1,401,239.55 | 1,305,456.82 |
| **Fixed Assets** | | |
| 16100 · Computer Equipment | 62,462.27 | 62,462.27 |
| 16110 · Equipment | 317,892.83 | 317,892.83 |
| 16120 · Furniture & Fixtures | 28,955.53 | 28,955.53 |
| 16130 · Software | 16,710.59 | 16,710.59 |
| 16900 · Fixed Asset Holding Account | 80,875.00 | 80,875.00 |
| 17100 · Accum Depr - Computer Equipment | -62,462.27 | -62,462.27 |
| 17110 · Accum Depr - Equipment | -261,788.37 | -261,788.37 |
| 17120 · Accum Depr-Furniture & Fixtures | -21,060.66 | -21,060.66 |
| 17130 · Accum Depr - Software | -16,710.59 | -16,710.59 |
| **Total Fixed Assets** | 144,874.33 | 144,874.33 |
| **Other Assets** | | |
| 18100 · Patents | 270,470.68 | 195,993.63 |

| | | |
|---|---|---|
| 18120 · Trademarks | 2,130.84 | 2,130.84 |
| 18130 · Accum Amort- Trademarks | -2,130.84 | -2,130.84 |
| **Total Other Assets** | 270,470.68 | 195,993.63 |
| **TOTAL ASSETS** | 1,816,584.56 | 1,646,324.78 |

**LIABILITIES & EQUITY**

**Liabilities**

**Current Liabilities**

**Accounts Payable**

| | | |
|---|---|---|
| 20000 · Accounts Payable | 2,431,142.61 | 2,413,752.06 |
| **Total Accounts Payable** | 2,431,142.61 | 2,413,752.06 |

**Other Current Liabilities**

| | | |
|---|---|---|
| 20050 · Accrued Inventory Liability-RRD | 310,751.14 | 310,751.14 |
| 20200 · Accrued Royalties Payable | 1,589.34 | 1,589.34 |
| 20300 · Notes Payable, Current - Loan 1 | 666,241.00 | 666,241.00 |
| 20310 · Notes Payable, Current - Loan 2 | 6,613,500.00 | 6,613,500.00 |
| 20330 · Warrant Liability | 2,232,712.00 | 2,232,712.00 |
| **Total Other Current Liabilities** | 9,824,793.48 | 9,824,793.48 |
| **Total Current Liabilities** | 12,255,936.09 | 12,238,545.54 |
| **Total Liabilities** | 12,255,936.09 | 12,238,545.54 |

**Equity**

| | | |
|---|---|---|
| 30100 · Preferred Stock - Series A | 1,423.00 | 1,423.00 |
| 30110 · Preferred Stock - Series B | 3,764.71 | 3,764.71 |
| 30120 · Preferred Stock - Series C | 8,038.10 | 8,038.10 |
| 30130 · Common Stock | 5,607.00 | 5,607.00 |
| 30200 · APIC - Preferred Stock Series A | 1,108,799.45 | 1,108,799.45 |
| 30210 · APIC - Preferred Stock Series B | 2,359,190.29 | 2,359,190.29 |
| 30220 · APIC - Preferred Stock Series C | 4,795,681.53 | 4,795,681.53 |
| 30230 · APIC - Common Stock | 486,497.02 | 486,497.02 |
| 30900 · Retained Earnings | -18,276,952.63 | -18,276,952.63 |
| Net Income | -931,400.00 | -1,084,269.23 |
| **Total Equity** | -10,439,351.53 | -10,592,220.76 |
| **TOTAL LIABILITIES & EQUITY** | 1,816,584.56 | 1,646,324.78 |

## EXHIBIT "D"

## SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS FOR THE THIRTY DAY PERIOD FOLLOWING FILING OF THE CHAPTER 11 PETITION

**Total Cash Receipts:**               **$1,000.00**

**Disbursements:**
    Employee Payroll:               $11,000.00
    Officer Payroll:               $3,000.00
    Operations:               $22,375.00
    Product Development:               $79,500.00
**Total Disbursements:**               **$115,875.00**

**Operating Income:**               (**$114,875.00**)

11

# r4 Vascular, Inc.

## 90-Day Cash Flow Projection

| Description | Month 1 | Month 2 | Month 3 |
|---|---|---|---|
| **PEOPLE** | | | |
| Payroll – Officers | $3,000 | $3,000 | $3,000 |
| Payroll – Hourly Employees – 2 FT + 1 PT | $11,000 | $11,000 | $11,000 |
| Subtotal People | $14,000 | $14,000 | $14,000 |
| | | | |
| **OPERATING** | | | |
| Rent | $10,338 | $10,338 | $10,338 |
| Utilities – Gas, Electric, Telephone | $1,100 | $1,100 | $1,100 |
| Bank Fees | $50 | $50 | $50 |
| Payroll Fees | $145 | $145 | $145 |
| Blue Cross | $1,317 | $1,317 | $1,317 |
| Janitorial | $275 | $275 | $275 |
| FedEx | $150 | $150 | $150 |
| Travelers Insurance – Worker's Comp, Property, Umbrella | $4,000 | $4,000 | $4,000 |
| Contingency | $5,000 | $5,000 | $5,000 |
| Subtotal Operating | $22,375 | $22,375 | $22,375 |
| | | | |
| **PRODUCT DEVELOPMENT** | | | |
| Allex Consulting | $15,000 | $15,000 | $15,000 |
| Honkanen Consulting | $4,500 | $4,500 | $4,500 |
| Balloon Development (Fast Forward) | $55,000 | $55,000 | $55,000 |
| Contingency | $5,000 | $5,000 | $5,000 |
| Subtotal Product Development | $79,500 | $79,500 | $79,500 |
| | | | |
| | $115,875 | $115,875 | $115,875 |

## EXHIBIT "E"

**Officers**: President – Steven Jacobs
                    Secretary – Jay Sturm

**Shareholders:**          See Schedules.

**Directors:**          Jeff Williams
                        Bob Mitchell
                        Dr. Richard Sweet

## EXHIBIT "F"

## CORPORATE RESOLUTION

SEE ATTTACHED

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:                                                  Chapter 11

**r4 Vascular, Inc.**                                   Case No. 13-

                        Debtor.
------------------------------------------------------X

## CERTIFICATE OF RESOLUTION

I, the undersigned, Secretary of **r4 Vascular, Inc.** ("the "Corporation"), do hereby certify

that at a meeting of the Board of Directors of the Corporation duly called and held on the 19th

day of July, 2013, the following resolutions were adopted and recorded in the Minute Book of the

Corporation, and they have not been modified or rescinded, and are still in full force and effect:

"**RESOLVED**, that in the judgment of the Board of Directors, it is desirable and
in the best interest of this Corporation, its Creditors, and other interested parties, that a
Petition be filed by this Corporation under the Provisions of Chapter 11 of the
Bankruptcy Code; and it was further

"**RESOLVED**, that the form of Petition under said Chapter 11 presented to this
meeting be, and the same hereby is, approved and adopted in all respects, and that Steve
Jacobs, as President of this Corporation, is authorized to Execute and verify a Petition
substantially in such form and to cause the same to be filed with the United States
Bankruptcy Court for the Southern District of New York at such time as he shall
determine; and it was further

"**RESOLVED**, that Steve Jacobs, as President of this Corporation be, and he
hereby is, authorized to execute and file all Petitions, reorganization schedules, lists and
other papers and to take any and all action which he may deem necessary or proper in
connection with such Chapter 11 Case, and, in that connection, that the Law Offices of
Scott A. Steinberg be retained and employed as legal counsel for the Corporation under a
general retainer, in addition to such special counsel as may hereafter become necessary or
proper with a view to the successful termination of such Chapter 11 Case."

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal of the Corporation this 19th day of July, 2013.

r4 Vascular, Inc.

By: _____
    Jay Sturm