UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:

**r4 VASCULAR INC.,**


                             Debtor.
---------------------------------------------------------X

Chapter 11

Case No.: 13-12409 (SCC)


DISCLOSURE STATEMENT FOR
PLAN OF LIQUIDATION OF
r4 VASCULAR, INC.


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**


LAW OFFICES OF SCOTT A. STEINBERG
*Attorney for the Debtor*
626 RXR Plaza, West Tower
Uniondale, New York 11556
(516) 522-2566
ssteinberg@saslawfirm.net

Of Counsel:    Scott A. Steinberg, Esq.

**Dated:** New York, New York
          November 14, 2013

The above captioned debtor and debtor-in-possession, r4 Vascular, Inc. (the "**Debtor**") has filed a *Plan of Liquidation of r4 Vascular, Inc.,* dated November 14, 2013 (the "**Plan**"), with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). This *Disclosure Statement for Plan of Liquidation of r4 Vascular, Inc.* (the "**Disclosure Statement**") is being submitted pursuant to Section 1125(b) of 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rule 3017 to all known holders of Claims against or Interests in the Debtor in order to adequately disclose information deemed to be material, important and necessary for the Debtor's Creditors to make a reasonably informed judgment about the Plan.

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

*[The bankruptcy Court has conditionally approved this Disclosure Statement under Section 1125(f)(3) of the Bankruptcy Code and has scheduled a hearing to consider final approval of this Disclosure Statement and confirmation of the Plan for January 15, 2014 at 10:00 a.m. (the "**Confirmation Hearing**").]*

Under Section 1126(b) of the Bankruptcy Code, only Classes of Allowed Claims and Interests that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote. Generally, a Class is impaired if its legal, contractual or equitable rights are altered under the Plan. Class 2 Creditors under the Plan are impaired and therefore are entitled to vote. Class 3 Interest holders will not receive or retain any property or distribution under the Plan and as such, pursuant to Section 1126(g) of the Bankruptcy Code are deemed to have rejected the Plan and are not entitled to vote.

To be accepted by a Class, the Plan must be accepted by more than one-half in number and two-thirds in dollar amount of the Allowed Claims actually voting in such Class.

Accompanying this Disclosure Statement are copies of the following documents (**Exhibits A, B and C respectively**):

      A.     **The Plan;**
      B.     **Current Balance Sheet of the Debtor; and**
      C.     **Current Liquidation Analysis of the Debtor.**

*[WHILE THE COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT FOR THIS DEBTOR IN ORDER TO PERMIT A VOTE TO BE TAKEN ON THE PLAN, THE COURT HAS NOT FINALLY APPROVED THE DISCLOSURE STATEMENT OR THE PLAN AND THIS DISCLOSURE STATEMENT IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL REGARDING THE PLAN.*

*BALLOTS ACCEPTING OR REJECTING THE PLAN MUST BE PROPERLY IMPLEMENTED AND MAILED OR HAND DELIVERED (FAXED OR EMAILED BALLOTS WILL NOT BE COUNTED) TO THE LAW OFFICES OF SCOTT A. STEINBERG, 626 RXR PLAZA, WEST TOWER, UNIONDALE, NEW YORK 11556-0626 SO AS TO BE RECEIVED ON OR BEFORE 4:00 P.M., EASTERN TIME, DECEMBER 30, 2013 FOR THEM TO BE CONSIDERED.*

*YOUR VOTE ON THE PLAN IS IMPORTANT.]*

## THE PLAN

The Plan provides for the liquidation of the Debtor in accordance with the provisions of the Bankruptcy Code. Distributions under the Plan will be made as follows: (1) Payment in full to amounts due to and claims of (a) the Office of the United States Trustee (b) Priority Tax Claims (c) Priority Claims and (d) Allowed Administrative Creditors; and (2) $125,000 less the amounts paid to the holders of Priority Tax Claims, Priority Claims, the Office of the United States Trustee and Administrative Claims for pro rata distribution to holders of Allowed Unsecured Claims (the "**Unsecured Creditors Fund**"), excluding White Sand Beach LLC's deficiency claim.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represent the Debtor's best estimate of the total amount of Allowed Claims and Allowed Interests in the Case. These estimates have been developed by the Debtor based on an analysis of the Schedules filed by the Debtor and the Proofs of Claim filed by Creditors. Although the Debtor believes that the amounts of the claims set forth below are substantially correct, there can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[1] |
|---|---|---|---|
| 1 | Priority Claims | Unimpaired | $0 |
| 2 | Unsecured Claims | Impaired | $2,286,748 |
| 3 | Equity Interests | Impaired | $ |

---

[1] The amounts set forth in this schedule are not, and should not be deemed admissions by the Debtor as to the validity or amount of any claim and the Debtor reserves all rights to object to any claim in this case.

CONFIRMATION OF THE PLAN

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on January 15, 2014 at 10:00 a.m., Eastern Standard Time, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before January 8, 2014 at 4:00 p.m. EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) and section 1129(b) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have accepted the Plan.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Debtor or its assets or properties or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

VOTING INSTRUCTIONS — SUMMARY

The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS." If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General**. The Debtor has sent to all of its known Creditors who are in Classes impaired under the Plan a ballot with voting instructions and a copy of this Disclosure Statement. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan. Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the official ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and more than one-half in number of claims in each class who actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the class rejecting it and (ii) at least one impaired class of creditors excluding insiders has accepted the Plan. See "REQUIREMENTS FOR CONFIRMATION" and "EFFECT OF CONFIRMATION."

**Voting Multiple Claims and Interests**.  A single form of ballot is provided for each Class of Claims.  Any Person who holds Claims in more than one Class is required to vote separately with respect to each impaired Class in which such Person holds Claims.  However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person.  Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots**.  The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor, no later than 4:00 p.m., Eastern Standard Time, on December 30, 2013 at the following address:

> Law Offices Of Scott A. Steinberg
> 626 RXR Plaza, West Tower
> Uniondale, New York 11556-0626
> Attn: Scott A. Steinberg, Esq.

**Voting Questions**. If you have any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing your ballot, you may contact Scott A. Steinberg, Esq. at (516) 522-2566.

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement and the accompanying ballots are being furnished by the Debtor to the Debtor's known Creditors pursuant to section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of a plan of reorganization.  The Plan is filed with the Bankruptcy Court and is incorporated herein by reference.  Parties in interest may view the Plan on the Internet at http://www.nysb.uscourts.gov.[2]

The purpose of this Disclosure Statement is to enable you, as a Creditor whose Claim is in a Class impaired under the Plan to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR.  PLEASE READ THIS DOCUMENT WITH CARE.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY**

---

[2]        A password is necessary for access to view documents on the Internet.

**STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan, as well as descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors to be informed about the Plan. Each holder of a Claim should review this Disclosure Statement and all exhibits hereto (including the Plan). Holders of Claims are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto.

6

You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### PROPONENT'S RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in a Chapter 7 liquidation, administrative costs will be greater, and it is unlikely that any creditor would receive a distribution on account of its Claim equal to what it would receive under the Plan.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND URGES EACH CREDITOR ENTITLED TO VOTE TO ACCEPT THE PLAN**

### THE DEBTOR

Prior to October 1, 2013, the Debtor owned and operated a medical device development business specializing in peripheral vascular access products that are sold either via direct sales or through distributors. The Debtor combined innovative design and manufacturing supervision with an intimate knowledge of the needs of patients, oncologists, interventional radiologists, surgeons, and nurses to create specialized premium access vascular products. These products helped clinicians access patient vasculature, and effectively maintain access for delivering chemotherapy, blood products, antibiotics, drugs or nutrition.

The Debtor's products included the Zeus biomimetically coated, peripherally inserted central catheter ("PICC"), which was the first Biomimetic coated PICC on the market, and the first non-valved saline-maintainable PICC. The Debtor also developed and manufactured the Pegasus CT PICC line, which was the Debtor's uncoated power injectable PICC for patients who may not need a biomimetic coated PICC. It incorporated a novel hub that allowed the clinician to suture anywhere along the patient pending hub, or use of a sutureless system for secure placement. Another device developed, but not released, by the Debtor was DrainEx, a rapid exchange drainage catheter. DrainEx is a kink resistant polyurethane catheter with a patent pending rapid exchange lumen, and built in suture cutting cleat that enables a single clinician to lock the catheter without needing a second set of hands. Because drainage catheters sometimes fail because of occlusion, replacement procedures routinely take longer to exchange out and often need a more invasive replacement catheter. The Debtor's exchange lumen was designed to reduce hospital costs and allow for a quick exchange of the failed catheters.

Other products developed and manufactured by the Debtor included Duraspan, a biomimetically coated dialysis catheter which allows for access and flow for the long term. Duraspan's non-eluting biomimetic coating brought increased reliability and performance to long term dialysis access. The Debtor also developed the Pherocious CT Apheresis Catheter, which has been described as the new standard for addressing the challenges of long term apheresis. Finally, the

7

Debtor manufactured numerous accessories for catheter placement and maintenance.

Importantly, due to poor market acceptance of the Debtor's catheter products, and an unexpected product recall of its Duraspan catheter due to manufacturing issues, the Debtor ceased sales of its entire catheter line early in the second quarter of 2012. The Debtor's financial difficulties were due to the cessation of sales of its catheter line; and thus its inability to cover operating expenses. As a result, the Debtor's senior secured creditor found itself with a significant equity investment in the company and essentially zero sales to cover operating costs.

Beginning in 2009, Debtor began development of an ultra-high-pressure Percutaneous Transluminal Angioplasty (coronary) balloon catheter, trade named "Vector" that was designed to be used in dilating calcified lesions in patient vasculature. Debtor's corporate strategy was to diversify its business away from the catheter products described above – and that sales from the catheter products would provide cash flow to cover the cost of the Vector development program. Unfortunately, this was not the case and the pursuit of the Vector development program resulted in significant expenditures of Debtor's capital and the Debtor was also required to raise substantial additional capital, which the senior creditor provided in the form of a secured line of credit in July 2010. The course of the Vector development program was tortuous, taking far longer and costing far more than anticipated. However, submission to the FDA was achieved in late 2010, and based on anticipated FDA approval of the Vector coronary balloon catheter Debtor began the process of marketing the company in whole or in parts (e.g. offering to split Debtor's Vector product from its non-balloon catheter product lines.) The Debtor had three significant indications of interest at reasonable valuations over the course of the next 18 months – all of which were terminated without sale.

With three failed sale attempts, the secured creditor decided to stop funding the Debtor. Further, having exhausted all other sales opportunities, Debtor made the decision to accept the only bid that passed due diligence review – for Debtor's non-balloon catheter related intellectual property (i.e. two 510K FDA approvals associated with certain of the peripheral access catheter products). In April 2013 the Debtor sold this intellectual property to C.R. Bard for $500,000. As of July 2013, the funds received from that sale were almost fully expended on overhead, and without a source of continued financing, the Debtor had no choice but to file for relief under Chapter 11.

### THE SALE TO WHITE SAND BEACH LLC

Prior to the Chapter 11 filing the Debtor considered various alternatives to restructure the Debtor and allow the Debtor to continue to remain in business. Specifically, the Debtor and its Board of Directors considered obtaining additional financing from institutional or private lenders and additional equity investments from existing shareholders or new shareholders. However, because the Debtor's financial position had deteriorated so substantially, none of the alternatives proved feasible. Thus, the Debtor and the Board of Directors determined that a sale of substantially all of the Debtor's assets to the bidder submitting the highest and best offer, was the only means by which creditors would see any payment on account of their claims.

On July 30, 2013 the Debtor filed a motion in the Bankruptcy Court seeking to sell substantially all of its assets White Sand Beach LLC, pursuant to Section 363 of the Bankruptcy Code, subject to higher and better offers, in accordance with the terms of an Asset Purchase Agreement dated July 25, 2013.   White Sand Beach held an undisputed, liquidated and non-contingent secured claim against the Debtor secured by substantially all of the Debtor's assets in the amount of $8,956,502.  The purchase price for the proposed sale to White Sand Beach LLC was (i) a credit bid in the amount of $6,000,000 pursuant to Section 363(k) of the Bankruptcy Code on account of White Sand Beach LLC's secured claim, (ii) cash in the amount of $125,000 (the "**Cash Proceeds**") and (iii) a waiver of the White Sand Beach deficiency claim.  The proposed sale was to be considered at an auction where competing bids could be presented.  Bidding procedures were approved by the Bankruptcy Court on August 29, 2013 and notice of the auction was published in the national edition of USA Today and Crain's New York business.  Notice of the auction was also provided to all parties who within the prior 12-18 months expressed an interest in purchasing the assets of the Debtor.

The auction was scheduled for September 25, 2013.  No competing bids were received and no potential bidders appeared at the auction.  As such, White Sand Beach LLC was determined to be the successful bidder.  On October 2, 2013 the Bankruptcy Court entered an order authorizing and approving the sale to White Sand Beach LLC pursuant to the terms of the Asset Purchase Agreement.

The sale to White Sand Beach LLC closed on October 2, 2013.

## OTHER SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more attorneys or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

On August 5, 2013, the Law Offices Of Scott A. Steinberg filed an application for retention as counsel to the Debtor.  On August 27, 2013, the retention order was signed and entered by the Bankruptcy Court.

On September 4, 2013, the Debtor submitted its application seeking authority to retain the law firm of DLA Piper as special patent counsel, to assist the Debtor in obtaining a patent for its Vector product.  On September 23, 2013, the retention order was signed and entered by the Bankruptcy Court.

### DEBTOR'S USE OF CASH COLLATERAL

On August 13, 2013 the Debtor filed an application seeking authority to use White Sand Beach LLC's cash collateral to pay ordinary and necessary operating expenses. On August 29, 2013 the bankruptcy Court signed and entered an interim order authorizing and approving the Debtor's use of the cash collateral. On October 2, 2013 the Bankruptcy Court signed and entered an order authorizing and approving the Debtor's use of the cash collateral on a final basis.

## MOTION TO PAY PRE-PETITION WAGES

On August 13, 2013, the Debtor filed a motion seeking authorization and ratification to pay pre-petition wages due certain employees. The motion was necessitated by the fact that the strict deadlines for filing the Chapter 11 case required that the Chapter 11 petition be filed in the middle of a pay period. On April 29, 2013 the Court approved the motion and entered an order authorizing and ratifying the payment of pre-petition wages.

## OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, the Debtor has filed monthly operating reports with the Bankruptcy Court detailing the results of the Debtor's ongoing business operations for July, August and September 2013. Copies of such reports may be obtained from the Bankruptcy Court during normal business hours, or may be obtained upon written request made to counsel for the Debtor.

## BAR DATE

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of its assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. Pursuant to section 501 of the Bankruptcy Code any creditor or interest holder may file a Proof of Claim or Interest and, unless disputed, such filed Proof of Claim or Interest supersedes the amount and priority set forth in the Debtor's schedules. On August 20, 2013 the Bankruptcy Court entered an order requiring all creditors, except for governmental entities, to file proofs of claim on or before September 30, 2013. Governmental entities have until 180 days after the Filing Date to file their proofs of claim.

## MOTION TO REJECT MAPLE GROVE LEASE

Once the sale to White Sand Beach LLC was completed, the Debtor no longer had a need or use for its operating space in Maple Grove, Minnesota. Applicant prepared and filed a motion to reject the Maple Grove lease. On November 5, 2013 the Bankruptcy Court entered an Order authorizing the Debtor to reject the Maple Grove lease.

**SUMMARY OF THE PLAN**

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Classification of claims is governed, in part, by sections 1122 and 1123(a) of the Bankruptcy Code.  Section 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C.§1123(a)(1), (3) and (4).  Section 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article III of the Plan classifies the various Claims against and Interests in the Debtor into two (2) classes of Claims and one (1) class of Interests:

Class 1  -        Priority Claims
Class 2  -        Unsecured Claims
Class 3  -        Equity Interests

Claims in Class 1 are unimpaired under the Plan. The votes of Holders of Claims in Class 1 are therefore NOT being solicited, are NOT entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.  Claims in Class 2 are impaired under the Plan, and the votes of the Holder of Claims in Class 2 are being solicited and are entitled to vote to accept or reject the Plan. Class 3 Equity Interests shall have their interests canceled as of the Effective Date and therefore are deemed to have rejected the Plan.  As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 - Priority Claims.**  Class 1 consists of all Allowed Claims, other than Administrative Claims or Bankruptcy Fees, to the extent entitled to priority under section 507 of the Bankruptcy Code.  Certain Claims for taxes and the payment of expenses incurred by the Debtor subsequent to the Petition Date are entitled to priority under section 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 2**- **Unsecured Claims.**  Class 2 consists of all Unsecured Claims.

**Class 3– Allowed Interests.** Class 3 consists of all Allowed Interests in the Debtor.

## TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Articles IV and V of the Plan provide for the treatment of impaired and unimpaired Claims classified in Article III of the Plan as follows:

**Class 1 - Priority Claims.** Subject to the provisions of Article 8 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

**Class 2- Unsecured Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Unsecured Claims (including deficiency claims), on the Effective Date, each holder of an Allowed Unsecured Claim shall receive payment in cash equal to its pro rata share of the Unsecured Creditors Fund to be established on the Effective Date in the amount of $125,000 less amounts paid to the holders of Non-classified Claims and the holders of Claims in Class 1. White Sand Beach LLC shall waive its deficiency Class 2 Claim and shall not be entitled to any distribution or payment on account of its Class 2 Claim. The Debtor estimates that the distribution to the holders of Allowed Class 2 claims shall be approximately 2% of the allowed amount of such claims.

**Class 3 - Allowed Interests**. On the Effective Date, all Allowed Interests of the Debtor shall be extinguished.

TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code. Article II of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the

Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

Article II of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is at least 30 days after the Effective Date.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor of its Estate under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier, the Debtor shall continue to be responsible for the payment of any such fees and charges.

**Professional Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's professionals pursuant to section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court. Unless otherwise agreed to in writing by the Debtor and the applicable professional, each professional must serve the Debtor with a writing indicating the sum of fees and expenses they intend to apply to the Court for reimbursement of and/or an award of, no later than three days prior to the Effective Date. Upon receipt of such notice, the Debtor must escrow sufficient funds, in the amounts necessary to pay such claims when and if allowed by the Court.

**Priority Tax Claims.** Except as may be otherwise mutually agreed in writing, all Allowed Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, shall be paid in full and receive on account of such claim, Cash in the amount of such Allowed Claim on the Effective Date. The Debtor does not believe there are any Priority Tax Claims.

## DISPUTED CLAIMS AND INTERESTS

Article VIII of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) 30 days after the Effective Date or (ii) 30 days after the date proof of such Claim or Interest is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

DISTRIBUTIONS UNDER THE PLAN

Article VIII contains provisions governing the making of distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest or (iii) such other times provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** Debtor's counsel shall be the Disbursing Agent to make distributions under the Plan for all claims. The Disbursing Agent shall be entitled to compensation for services rendered under the Plan at its customary fee and reimbursement of all expenses incurred in the performance of its duties.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Neither the Debtor nor the Disbursing Agent shall be required to attempt to locate any holder of an Allowed Claim.

UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent and such creditor shall forfeit its right to receive any distribution(s) under this Plan if such distribution is not claimed by the Entity entitled thereto before the later of (i) 1 year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such disputed Claims. Cash held in reserve for disputed Claims will be held in trust for the benefit of the holders of such Claims.

Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent shall hold such cash in a segregated account in accordance with section 345 of the Bankruptcy Code, and may invest any cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds. Any segregated amounts remaining after all Disputed Claims have been resolved will be retained by Debtor.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the date which is thirty (30) days after the Confirmation Order becomes a Final Order.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Effective on and as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code.

**Rejection Claims**.  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims.  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the successful purchaser, the Debtor, their successors or their respective properties.

## POST EFFECTIVE DATE OPERATIONS

On the Effective Date any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Following the Effective Date the distributions to the holders of Allowed Claims, it is anticipated that the Debtor will be dissolved pursuant to applicable law.  Until such time, the Debtor may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

## FUNDING

The Plan is funded by monies made available by White Sand Beach LLC.

The Debtor shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan. The Confirmation Order shall contain appropriate provisions consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 544

through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of monthly operating reports and post-confirmation status reports in accordance with Local Bankruptcy Rule 3020-1 which post-confirmation status reports shall be filed on January 15th, April 15th, July 15th and October 15th until entry of a final decree, dismissal or conversion of this case, whichever is earlier. Quarterly fees payable to the Office of the United States Trustee shall be paid by the Debtor until entry of a final decree, dismissal or conversion of this case, whichever is earlier.

## TRANSFER TAXES

Pursuant to section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan.

## REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if a proponent files modifications to a plan, pursuant to section 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of section 1127(a); however, the proponent of a modification to a plan must comply with section 1125 of the Bankruptcy Code with respect to the plan as modified. In other words, if a modification materially alters the treatment of any Creditor who has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

**RETENTION OF JURISDICTION**

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

**RISK FACTORS**

Plan payments are to be made from the Cash Proceeds, which are being held in escrow by the Disbursing Agent.

**CONFIRMATION OF THE PLAN**

All distributions to Creditors are contingent on the Plan being confirmed by this Court. Otherwise, the Debtor is not obligated to make the payments required hereunder.

**VOTING INSTRUCTIONS**

A Creditor who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "**Ballot**") that was sent out with this Disclosure Statement. See "VOTING INSTRUCTIONS -- Who May Vote." The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

**DEADLINE FOR RECEIPT OF BALLOTS**

The solicitation period for votes accepting or rejecting the Plan will expire at 4:00 p.m., Eastern Standard Time, December 30, 2013 (the "**Voting Deadline**"). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

**BALLOTING AGENT**

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by December 30, 2013 at 4:00 p.m. to:

LAW OFFICES OF SCOTT A. STEINBERG
626 RXR Plaza, West Tower
Uniondale, New York 11556-0626

(the "**Balloting Agent**").  A Creditor entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Scott A. Steinberg at (516) 522-2566 to receive a replacement Ballot.

## WHO MAY VOTE - IN GENERAL

Claims in Class 2, are impaired under the Plan.  Holders of Claims in Classes 2 are being solicited and are entitled to vote to accept or reject the Plan.  Claims in Class 1 are not impaired by the Plan and are deemed to have accepted the Plan.   Allowed Interests in Class 3 are impaired under the Plan and are deemed to reject the Plan.

**Ballots Executed in a Representative or Fiduciary Capacity**.  Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims**.  A single form of ballot is provided for each Class of Claims entitled to vote.  Any Person who holds Claims in more than one impaired Class is required to vote separately with respect to each Class in which such Person holds Claims.  However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person.  Thus each Person need complete only one ballot for each Class.

## DEFECTS OR IRREGULARITIES

**IN THE EVENT AN EXECUTED AND TIMELY FILED BALLOT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, THE BALLOTING AGENT SHALL NOTIFY THE CREDITOR OR INTEREST HOLDER WHICH HAS EXECUTED THE BALLOT SO THAT ALL BALLOTS THAT ARE CAST INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE PLAN.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots.  Except as set forth above, neither the Debtor, the Balloting Agent, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification.  All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances.  Unless otherwise directed by the Bankruptcy Court, delivery of

Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

### REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Creditor who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim represented by such Ballot, (ii) be signed by the Creditor in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on January 15, 2014 at 10:00 a.m. in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before January 8, 2014.** Objections must be served upon (i) Counsel to the Debtor: Law Offices Of Scott A. Steinberg, 626 RXR Plaza, West Tower, Uniondale, New York 11556-0626; (ii) Counsel to White Sand Beach LLC: Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York, New York 10022 – Attn: A. Mitchell Greene, Esq.; and (iii) United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 Attn: Richard Morrissey, Esq. and filed electronically in accordance with the Court's ECF procedures.

### REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of

all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interests would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to section 1102 of the Bankruptcy Code.

After consideration of the effects that a Chapter 7 liquidation would have on the proceeds available for distribution including the increased costs and expenses of a chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, the Debtor believes that in a Chapter 7 liquidation, the holders of Class 2 Allowed Claims would receive less than they would if the plan were approved.

**Liquidation Analysis.**  The Debtor has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* at least equal to the present value of the distribution that such person would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the Debtor's liquidation and the establishing of the Unsecured Creditors Fund for pro rata distribution to the Debtor's unsecured creditors.

Because substantially all of the Debtor's assets were previously sold to White Sand Beach LLC for (i) a credit bid of $6,000,000; (ii) $125,000 in cash to be used to fund the Plan; and (iii) a waiver of White Sand Beach LLC's deficiency (Class 2 claim) claim, there are virtually no assets of value available for distribution to unsecured creditors. While the Plan does not provide for payment in full to the unsecured creditor class, the Plan does contemplate payment to those creditors in an amount greater than they would receive in a chapter 7 liquidation, due to the increased expenses of administration of a Chapter 7 estate. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**Feasibility.**  For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the distribution of the Cash Proceeds and the concomitant liquidation of the Debtor. Thus the Plan meets the feasibility requirements of the Bankruptcy Code.

**Confirmation With the Acceptance of Each Impaired Class.**  The Plan may be confirmed if each impaired Class of Claims or Interests accepts the Plan. Classes of Claims or Interests which are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims or Interests impaired by the Plan are entitled to cast Ballots accepting or rejecting the Plan. Holders of Claims or Interests not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of Claims or Interests that will neither receive nor retain any property under the Plan are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

**Confirmation Without the Acceptance of Each Impaired Class**.  In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the

Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. The Debtor believes that the Plan is in the best interest of all Creditors and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that under the Plan all classes of Impaired Claims and Impaired Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests with which their legal rights are intertwined, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule." Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Secured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Secured Claims if the holders of such Claims retain their liens and each holder of a Claim of such class receives on account of such Claim deferred cash payments, totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interest in the property securing its Claim.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. There are no classes junior to the class of Unsecured Claims in this case that are retaining any property as Allowed Interests in Class 3 will be extinguished as of the Effective Date.

If the Plan is rejected by Class 2, the Debtor requests that the Plan be confirmed under section 1129(b).

### EFFECT OF CONFIRMATION

INJUNCTION

Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, White Sand Beach LLC or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.

RELEASE

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United

**States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.**

LIMITATION OF LIABILITY

**Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  Pursuant to section 1125(e), as set forth in Article IX of the Plan, neither the Debtor, nor any of its officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article IX of the Plan.**

ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of liquidation; or (c) the dismissal of the Debtor's case.

The Debtor believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in Chapter 7 liquidation and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Debtor reserves its right to file any amended plan and/or disclosure statement.

CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential

25

U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

26

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Debtor's counsel, Law Offices Of Scott A. Steinberg, 626 RXR Plaza, West Tower, Uniondale, New York 11556-0626 (516) 522-2566 or (ii) may be retrieved from the Court's web site at https://ecf.nysb.uscourts.gov/cgi-bin/login.pl (provided such party has PACER access) by searching case no Case No.: 13-12409 (SCC).

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

## CONCLUSION

**The Debtor believes that confirmation of the Plan is in the best interests of all Creditors and strongly encourages all holders of Claims against the Debtor to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received not later than 4:00 p.m., Eastern Standard Time, on December 30, 2013.**

**Dated:**    Uniondale, New York
November 14, 2013

**r4 VASCULAR, INC.**

By: *Steven Jacobs*

**LAW OFFICES OF SCOTT A. STEINBERG**
*Attorney for the Debtor*
626 RXR Plaza, West Tower
Uniondale, New York 11556-0626
(516) 522-2566

By: *Scott A. Steinberg*
    **Scott A. Steinberg**

27

**EXHIBIT 'A'**
**(PLAN OF LIQUIDATION)**

**EXHIBIT "B"**
**(CURRENT BALANCE SHEET)**

**EXHIBIT "C"**
**(LIQUIDATION ANALYSIS)**